412 A.2d 498

**COMMONWEALTH of Pennsylvania**

v.

**Jay ARTHUR, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1980.

Decided March 20, 1980.

Arthur J. King, Ronald F. O'Driscoll, Jr., Asst. Public Defenders, for appellant.

Ronald T. Williamson, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant was convicted of burglary, robbery, and conspiracy to commit burglary for his participation in the May 16, 1974 burglary and robbery of a law office. [During the commission of these crimes, a secretary in the law office (hereinafter referred to as the "victim") was injured.] Post-verdict motions were denied and appellant appealed to the Superior Court, arguing that he received ineffective assistance of trial counsel. The Superior Court remanded the case "to the lower court for an evidentiary hearing on appellant's claim of ineffective assistance of trial counsel." An evidentiary hearing was held and the lower court rejected appellant's claim of ineffective assistance of trial counsel. Appellant re-appealed to the Superior Court, which affirmed the lower court in a per curiam opinion. This appeal followed.

Appellant's first contention is that trial counsel was ineffective in failing to move for the suppression of (1) the victim's alleged photograph identification and (2) the victim's subsequent identifications of appellant. Appellant argues that trial counsel should have moved for the suppression of the alleged photographic identification because it was allegedly made without the presence of counsel while he (appellant) was under arrest and because of "the likelihood of irreparable suggestivity inherent in such identifications." Appellant argues that trial counsel should have moved for the suppression of the victim's subsequent identifications of appellant because they were "tainted" by the alleged photographic identification.

This Court held in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605–06, 235 A.2d 349, 352–53 (1967) that:

counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis. [Emphasis in original]

"As a corollary, counsel is not ineffective for failing to raise baseless or frivolous issues." *Commonwealth v. Wilson*, 482 Pa. 350, 353, 393 A.2d 1141, 1143 (1978).

At trial, the victim testified that during her hospitalization for treatment of the injuries incurred during the crimes in question, Police Officer Alfred M. Gillette visited her and showed her "some photographs . . . to identify." The victim described this photographic display as follows:

[Prosecutor] Q Did you have occasion to speak with the police while you were in the hospital?

[Victim] A Yes, sir.

I had Detective Gillette came [sic] in the hospital with some photographs for me to identify, if I could. And I looked through quite a few of them, and I did pick out this one photograph as one that I suspected being the one who was in the office. It was a very small photograph and was taken from a distance.

There was no testimony at trial that the victim selected appellant's photograph during this photographic display. In fact, Officer Gillette (the officer who conducted the photographic display) testified at the evidentiary hearing that the victim "made no identification" during the display:

[Appellant's Counsel at the Evidentiary hearing] Q Now, I would ask you, do you recall going to a hospital on May 20, 1974, to talk to a Miss Ingels [the victim]?

[Officer Gillette] A I believe she was in Montgomery Hospital. Yes, I was there.

Q And at that time did you have occasion to show her any photographs?

A Yes, I did.

Q And did she pick out any photograph from the group that you showed her as the person who was involved in the robbery that took place in Attorney Robert Trucksess' [law] office?

A No, *she made no identification from the picture.*

Q Was Jay Arthur's [appellant] picture among those pictures that you showed her?

A Yes, it was. [Emphasis provided]

 It follows that since the victim did not make a photographic identification of appellant, the victim's subsequent identifications of appellant cannot be tainted by the non-existent photographic identification and, therefore, a motion to suppress the subsequent identifications would have been frivolous.

Appellant's second contention is that trial counsel was ineffective in failing to request a lineup prior to the second preliminary hearing. [Subsequent to the first preliminary hearing, the charges against appellant were dismissed. Shortly thereafter, another criminal complaint (setting forth the same charges as the first) was filed against appellant, appellant was re-arrested, and a second preliminary hearing was held.]

 In arguing that trial counsel should have requested a lineup prior to the second preliminary hearing, appellant assumes that the second preliminary hearing would have been where the "first confrontation" between the victim and himself would take place and that therefore, a lineup would mitigate any suggestiveness that might transpire at this "first confrontation". Appellant's argument is without merit since the "first confrontation" between the victim and appellant had *already occurred* at the *first* preliminary hearing. At trial, the victim testified that at the first preliminary hearing, she identified (to at least two persons) appel-

lant (who was present at the first preliminary hearing among a group of individuals of his same general description) as one of the individuals who committed the crimes in question. Since the "first confrontation" between the victim and appellant had already occurred at the first preliminary hearing, there was no need for a lineup prior to the second preliminary hearing to mitigate the suggestiveness which might transpire at a "first confrontation".[1]

Appellant's third contention is that trial counsel was ineffective "in failing to protect the Rule 1100 issue" in that he did not answer the Commonwealth's petition for an extension of time to commence trial.[2]

On January 29, 1975, appellant's trial counsel filed an "application for trial continuance" and this application, which was opposed by the Commonwealth, was granted. In said application for continuance, appellant signed the following statement: "I am . . . aware of my right to a speedy trial and that a continuance shall cause a delay in

1. Appellant also argues that trial counsel was ineffective in failing to have a stenographic record made of appellant's first preliminary hearing. In arguing that this record could have been useful to his case, appellant assumes that the victim testified at the first preliminary hearing and that, during her testimony, she failed to identify appellant. Appellant's argument fails since the victim did not testify at the first preliminary hearing.

 Appellant also argues that trial counsel was ineffective in failing to "have a large group of Black males present at the [second] preliminary hearing" so that (presumably) it be more difficult for the victim to make an identification of appellant at the second preliminary hearing. Trial counsel's failure to have this group in attendance at said hearing does not constitute ineffective assistance of counsel.

2. Pennsylvania Rule of Criminal Procedure 1100(a)(2) provides:

 Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

 Pennsylvania Rule of Criminal Procedure 1100(c) provides in pertinent part:

 At any time prior to the expiration of the period for the commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. . . . Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth.

having said criminal charges disposed of by the Court." On February 4, 1975, six days after appellant's trial counsel filed his "application for trial continuance" and 180 days after the complaint against appellant was filed, the Commonwealth filed a petition for an extension of time to commence trial (under Rule 1100). Appellant's trial counsel did not answer this petition and the petition was granted.

Appellant's argument that trial counsel was ineffective in failing to oppose the Commonwealth's petition for an extension of time is without merit. The Commonwealth's petition was made necessary by the trial continuance which appellant moved for and received six days earlier. If trial counsel had opposed the Commonwealth's petition, he would have had to argue for an anomalous position, i. e., he would have had to argue that although appellant was entitled to a trial continuance 6 days earlier, the Commonwealth should not receive an extension of time to coincide with said continuance.[3]

Appellant's fourth contention is that trial counsel was ineffective because prior to trial, he failed to interview co-defendant William Thomas who (appellant argues) would have provided him with "a possible alibi defense". The charges against co-defendant Thomas were dismissed on March 29, 1975 (approximately three weeks prior to the start of appellant's trial) on the grounds that Pennsylvania Rule of Criminal Procedure 1100 was violated.

At the evidentiary hearing, appellant testified that "about a week before my sentencing", co-defendant Thomas "told me that he would tell Judge [Robert W.] Tredinnick [who presided at appellant's trial] that he [Thomas] was the one that had did [sic] the robbery, along with Howard Goudy" and that appellant was not involved in the crimes. Appel-

---

3. Appellant argues that the Commonwealth's petition for an extension of time does not meet the requirements of *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976) and therefore, trial counsel should have opposed this petition. *Mayfield* was decided on October 8, 1976, 20 months after the Commonwealth filed its petition; "[C]ounsel will not be deemed ineffective for failing to predict future developments in the law." *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

lant also testified that after having this conversation with Thomas, appellant informed trial counsel of same.

This contention is without merit. Appellant testified that he did not inform defense counsel of co-defendant Thomas' "possible alibi defense" until appellant's trial was over; prior to appellant's trial, trial counsel had no knowledge that Thomas would provide an alibi for appellant.

 As support for the proposition that trial counsel's failure to interview co-defendant Thomas constituted ineffective assistance of counsel, appellant cites *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976) wherein this Court held that a defense counsel's failure (prior to trial) to interview eyewitnesses to the crime in question constituted ineffective assistance of counsel. *Mabie* is distinguishable from the instant case in that Mabie's defense counsel *had* to interview the aforementioned eyewitnesses before determining whether the eyewitnesses would be helpful to his client's case. By contrast, trial counsel in the instant case could conclude *without* interviewing co-defendant Thomas that his testimony would be of no value to and could damage the credibility of appellant's case. Thomas's entire testimony could be destroyed quite easily by the fact that he waited until the charges which were proferred against him were dismissed before he admitted that he (and not appellant) committed the crimes in question; Thomas' testimony would have the same lack of credibility as the testimony of "a co-conspirator who is already in prison and realistically has little to lose by attempting to free his partner." *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975).[4]

Judgments of sentence affirmed.

NIX, J., concurred in the result.

ROBERTS, J., filed a dissenting opinion.

4. Appellant also argues that trial counsel was ineffective in filing "boiler-plate" post-verdict motions and thereby giving "up the right to raise the identification and Rule 1100 issues that were so central to . . . [appellant's] case." This claim is spurious. Appellant *does not specify what errors were committed by the trial court with* regards to the identification and Rule 1100 issues which should have been raised by trial counsel in post-verdict motions. Additionally,

270

ROBERTS, Justice, dissenting.

I dissent. In my view, trial counsel provided ineffective assistance in failing to move to suppress the victim's in-court identification made outside counsel's presence after arrest. Relying on the investigating officer's testimony at the evidentiary hearing held after trial to the effect that the victim made no such identification, the majority concludes that appellant's claim is without merit. This reliance, however, is entirely misplaced, for at trial the jury could reasonably conclude, based on the victim's testimony, that the victim indeed "picked out" appellant at the photographic showing. There is, therefore, no foundation on this record to conclude that the photographic identification, which took place after appellant's arrest and outside counsel's presence, is valid. Nor is there anything on this record to indicate that the in-court identification had an independent origin. Appellant must be granted a new trial.

the failure of trial counsel to raise his own ineffectiveness with regards to the identification and Rule 1100 issues in post-verdict motions did not waive these claims of ineffectiveness. *Commonwealth v. Gardner*, 480 Pa. 7, 389 A.2d 58 (1978).