943 A.2d 940

COMMONWEALTH of Pennsylvania, Appellee

v.

Daniel GWYNN, Appellant.

Supreme Court of Pennsylvania.

Submitted March 29, 2005.

Decided March 20, 2008.

400

402

Scott Frederick Griffith, Esq., for Daniel Gwynn.

Hugh J. Burns, Esq., Catherine L. Marshall, Amy Zapp, Esq., Allyson Green, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice EAKIN.

A jury convicted appellant of first degree murder and related charges in the killing of Marsha Smith. Appellant entered Smith's apartment building and attempted to rape her, but Smith's neighbors intervened and forced appellant from the building. He returned to the building later and set it on fire, killing Smith. The other five inhabitants survived. The jury set the penalty at death November 6, 1995. This Court affirmed the conviction and sentence November 23, 1998. *See Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143 (1998). The United States Supreme Court denied appellant's petition for writ of certiorari.

Appellant filed a timely *pro se* petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.;* counsel was appointed and an amended PCRA petition was filed. The Commonwealth filed a motion to dismiss the amended petition, asserting appellant's issues were previously litigated. Pursuant to Pa.R.Crim.P. 907,[1] the PCRA court

---

1. Rule 907 states:

 If the judge is satisfied from [his] review that there are no genuine issues concerning any material fact and that [appellant] is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties

notified all parties of its intention to dismiss the petition. The court subsequently dismissed the petition without an evidentiary hearing, concluding each of the 16 issues raised therein were either previously litigated or meritless. *See* PCRA Court Opinion, 2/10/03, at 2 (citing 42 Pa.C.S. §§ 9543(a)(3),[2] 9544(a)(2) [3] (previously litigated claims not reviewable under PCRA)). Appellant filed a timely notice of appeal from the PCRA court's dismissal.

"On appeal from the denial of PCRA relief, our standard of review is whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Abu–Jamal,* 574 Pa. 724, 833 A.2d 719, 723 (2003) (citing *Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94, 97 n. 4 (2001)). With this standard in mind, we must determine whether the PCRA court properly dismissed appellant's petition without an evidentiary hearing.

In dismissing appellant's claims, the PCRA court relied on *Commonwealth v. Pirela,* 556 Pa. 32, 726 A.2d 1026 (1999), which held a PCRA petitioner cannot obtain collateral review of claims that were raised and litigated on direct appeal by simply re-labeling them as ineffectiveness claims and present-

---

of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The [appellant] may respond to the proposed dismissal within 20 days of the date of the notice.
Pa.R.Crim.P. 907(1).

2. Section 9543(a)(3) requires:

(a) General rule.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

\* \* \*

(3) That the allegation of error has not been previously litigated or waived.
*Id.*

3. Section 9544(a)(2) states:

(a) Previous litigation.—For purposes of this subchapter, an issue has been previously litigated if:

\* \* \*

(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue.…
*Id.*

ing revised theories of relief in a PCRA petition. *See* PCRA Court Opinion, 2/10/03, at 2–3 (citing *Pirela*, at 1032). Since the PCRA court's decision in this case was filed, however, this Court decided *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564 (2005), which addressed the PCRA's preclusion of previously litigated "issues." We concluded the term "issue" as used in §§ 9543(a)(3) and 9544(a)(2) [4] "refers to the discrete legal ground that was forwarded on direct appeal and would have entitled the defendant to relief." *Collins*, at 570. Therefore, the relevant inquiry when determining whether a PCRA petitioner is properly asserting a new and distinct issue, rather than simply re-labeling and reasserting a previously litigated one, is whether the ineffectiveness claim constitutes a "discrete legal ground or merely an alternative theory in support of the same underlying issue that was raised on direct appeal." *Id.* In examining the nature of an ineffectiveness claim, we concluded:

> [I]neffectiveness claims are distinct' [sic] from those claims that are raised on direct appeal. The former claims challenge the adequacy of representation rather than the conviction of the defendant. Accordingly, we are persuaded by Appellant's position that a Sixth Amendment claim of ineffectiveness raises a distinct legal ground for purposes of state PCRA review under § 9544(a)(2). Ultimately, the claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal, but a Sixth Amendment claim raises a distinct issue for purposes of the PCRA and must be treated as such.

*Id.*, at 573. Therefore, courts must treat ineffectiveness claims raised under the PCRA as wholly independent of the underlying claim of error, and must review them under the three-prong ineffectiveness standard announced in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). *Collins*, at 573. Under *Pierce*, a PCRA petitioner advancing an ineffectiveness claim must prove: (1) the claim has arguable merit;

4. The term "issue" actually appears only in § 9544(a)(2). Section 9543(a)(3) uses the distinct—but essentially equivalent—phrase, "allegation of error"; any distinction does not affect our analysis.

(2) counsel lacked any reasonable basis for his action or omission; and (3) petitioner was prejudiced by counsel's conduct. *Pierce*, at 976–77.

*Collins* was filed after the PCRA court's ruling here; therefore, the court did not commit reversible error in dismissing appellant's issues as previously litigated. We will address appellant's ineffectiveness claims under *Pierce* to the extent review is possible from the record, and "will remand this matter to the PCRA court for further consideration only if we find that the claims that were considered 'previously litigated' by the PCRA court are in need of further elucidation and cannot be evaluated by this [C]ourt." *Collins*, at 574.

■ Appellant asserts trial counsel rendered ineffective assistance by failing to investigate and present expert medical testimony establishing his borderline personality disorder and his crack-cocaine addiction and intoxication at the time of the offense. He asserts such evidence would have bolstered his defense of voluntary intoxication and would have established diminished capacity since these factors precluded him from forming the specific intent to kill. *See* Brief of Appellant, at 7, 22, 25. In addition, appellant asserts appellate counsel was ineffective for failing to investigate and present such evidence, and for failing to raise trial counsel's ineffectiveness in this regard on appeal. *See id.*, at 21, 24, 27.

On direct appeal, appellant asserted trial counsel was ineffective for failing to present expert medical testimony of his crack-cocaine intoxication at the time of the murder as relevant to his diminished capacity defense. We determined this claim failed since appellant failed to articulate "what evidence was available and identify a witness who was willing to offer such [testimony]." *Gwynn*, at 151 (citing *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471, 477 (1998); *Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251, 1265 (1994) (when defendant claims expert testimony should have been introduced at trial he must articulate what evidence was available and identify witness willing to offer such [testimony] )). Because we addressed the discrete issue of trial coun-

sel's ineffectiveness with regard to expert testimony on the defense of diminished capacity, it is barred as previously litigated.[5] In addition, appellant's claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in this regard on direct appeal is meritless since it was, in fact, raised.

■ With regard to appellant's claim that trial counsel was ineffective for failing to present evidence of voluntary intoxication, we conclude this claim is meritless. The record establishes trial counsel elicited testimony on cross-examination establishing appellant's frequent cocaine use and addiction. N.T. Trial, 10/31/95, at 71–72, 150–56. Furthermore, counsel introduced appellant's statement to police taken the day of the murder; counsel highlighted appellant's statements that he "smoke[d] crack a lot" and "[got] high every day," and was "real high" on the morning of the fire. N.T. Trial, 11/1/95, at 19–22. Appellant's claim that trial counsel was ineffective for failing to present evidence of voluntary intoxication lacks arguable merit and therefore, it does not satisfy *Pierce.* For the same reasons, we reject as meritless appellant's claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in this regard on appeal.

■ Appellant next argues counsel rendered ineffective assistance by failing to challenge the constitutionality of his warrantless detention and subsequent confession. We addressed the underlying claim of error on direct appeal and found it lacked merit since "the record reflects appellant's statement occurred following a lawful arrest, and was given consensually following *Miranda* warnings and in the absence of any flagrant misconduct." *Gwynn,* at 150.[6] Appellant fails to establish this claim has arguable merit.

5. Appellant's related argument that counsel failed to challenge the applicability of the aggravating circumstance at 42 Pa.C.S. § 9711(d)(7) (defendant knowingly created grave risk of death to another person in addition to victim) by introducing evidence of appellant's diminished capacity fails for the same reason.

6. This conclusion is further bolstered by the fact that counsel did, in fact, challenge appellant's detention and confession by filing a motion to suppress those statements based on his intoxication.

■ Appellant argues counsel was ineffective for failing to present evidence that his psychiatric state, due to severe crack-cocaine withdrawal symptoms, prevented him from making a voluntary waiver of his *Miranda*[7] rights. On direct appeal, appellant argued because he was high on crack-cocaine at the time of his waiver, it was not voluntary. We stated:

> In determining the voluntariness of a confession and the waiver of *Miranda* rights, a court must consider and evaluate the totality of the circumstances attending the confession and the waiver of the rights. A reviewing court is to examine the following in determining the independence of a confession: 1) the voluntariness of the confession, including whether *Miranda* warnings were given; 2) the temporal proximity of arrest and confession; 3) the presence of intervening circumstances; and 4) the purpose and flagrancy of the official misconduct.... Here, the record reflects that appellant's statement occurred following a lawful arrest, and was given consensually following *Miranda* warnings and in the absence of any flagrant misconduct.... Appellant's claim is meritless.

*Gwynn*, at 150 (citations omitted). Despite appellant's previous argument that his intoxication precluded him from making a voluntary *Miranda* waiver, he now asserts counsel was ineffective for failing to present evidence that his withdrawal symptoms made a voluntary waiver impossible. We addressed the voluntariness of appellant's *Miranda* waiver in his direct appeal, and determined the record demonstrated it was made consensually. Appellant fails to demonstrate the arguable merit of this claim of error; therefore, he fails the *Pierce* test. In addition, appellant's argument he was suffering from withdrawal at the time of his waiver is incompatible with his previous assertion that he was under the influence of drugs at that time. Appellant has not demonstrated counsel lacked a reasonable basis for failing to present evidence of appellant's withdrawal at the time of his waiver, or that counsel's inaction prejudiced him. Counsel's failure to present withdrawal evi-

7. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

dence appears reasonable in light of the fact that he had filed a motion to suppress based on the contrary allegation of appellant's intoxication at the time of his waiver. Counsel cannot be ineffective for failing to argue incompatible scenarios.

■ Appellant next claims he is entitled to a new trial because his conviction was obtained in violation of his state and federal constitutional rights to counsel; the trial court admitted his statements to police, which he alleges were obtained during an illegal and warrantless detention and without the benefit of counsel. He argues his requests for counsel were ignored, and the incriminating statements should have been suppressed. He alleges trial counsel was ineffective for failing to seek suppression based on the violation of his right to counsel under the Sixth Amendment and Article I, § 9 of the Pennsylvania Constitution. He further argues appellate counsel was ineffective for failing to raise this issue on direct appeal.

Almost ten days after the fire, appellant was arrested on five outstanding bench warrants. One of the warrants was for an auto theft; during police questioning of him at the time of that theft, appellant alleges he invoked his Fifth Amendment right to counsel. On direct appeal, appellant argued that when the police re-arrested him on the bench warrant for that crime, they were required to obtain a waiver from his auto theft counsel before they could question him regarding the arson and murder. We rejected this argument since appellant failed to prove he invoked his Fifth Amendment right on the auto theft charge, and noted even if he did so prove, "the re-initiation of questioning does not violate the Fifth Amendment unless the accused has been in continuous custody." *Gwynn*, at 150 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 177, 111 S.Ct. 2204 (1991)).

■ In addition, we noted this case did not present either a Sixth Amendment or an Article I, § 9 issue. We stated, "[t]he Sixth Amendment right to counsel is offense-specific and, therefore, does not prevent a suspect from being questioned

410

about an unrelated crime." *Id.*, at n. 4 (citing *McNeil,* at 175, 111 S.Ct. 2204). Appellant's underlying claim of error lacks arguable merit; his ineffectiveness claim regarding counsel's failure to raise the alleged Sixth Amendment violation therefore fails.

 On direct appeal, we also rejected appellant's claim that his right to counsel under Article I, § 9 was violated. We stated appellant "fail[ed] to support his claim with any citations to cases or any discussion and, therefore, his claim is unreviewable." *Id.*, at n. 5. Appellant now reasserts his challenge under § 9, arguing, "[t]he un-counseled seventeen hour interrogation of [him] not only violated his Sixth Amendment right to counsel, it violated the broader right to counsel provided by [§ 9] of the Pennsylvania Constitution." Brief of Appellant, at 45. We now reject appellant's claim on the merits since "the right to counsel, as guaranteed by Article I, § 9 of the Pennsylvania Constitution, is coterminous with the Sixth Amendment right to counsel for purposes of determining when the right attaches." *Commonwealth v. Arroyo,* 555 Pa. 125, 723 A.2d 162, 170 (1999). Therefore, the state constitutional right to counsel attaches at the same time the Sixth Amendment right to counsel attaches, *i.e.,* "the initiation of adversary judicial proceedings," which is generally the arraignment. *McNeil,* at 175, 111 S.Ct. 2204. Appellant's underlying claim of error thus lacks arguable merit; this claim of ineffectiveness fails.

 Appellant next presents two properly layered ineffectiveness claims with regard to alleged prosecutorial misconduct.[8] He asserts his due process rights were violated by the

8. On direct appeal, appellant raised the following issue:

 Trial counsel rendered ineffective assistance in failing to object to the trial prosecutor's closing remarks that he "felt sorry" for defense counsel because he "got stuck" with a bad case for which he had "so little" to rely on.

 Brief for Appellant, No. 129 Capital Appeal Docket, 11/14/96. This Court determined appellant failed to demonstrate ineffectiveness in this regard since he failed to establish the impropriety of the prosecutor's remarks. *Gwynn,* at 152. Appellant's instant layered ineffectiveness claims address two distinct allegations of prosecutorial misconduct.

prosecutor's statement in his guilt phase summation that appellant "made a conscious decision to murder six people" when appellant was only charged with murdering one person. Brief of Appellant, at 49 (citing N.T. Trial, 11/2/95, at 123). In addition, he asserts the prosecutor committed misconduct by asking the jury during his penalty phase summation to show no mercy toward appellant and by urging the jury not to accept appellant's age as a mitigating factor. *Id.*, at 78. Appellant argues trial counsel was ineffective for failing to object to the above statements, and appellate counsel was ineffective for failing to raise these errors on direct appeal. *Id.*, at 48.

We reject appellant's argument that the prosecutor violated his due process rights by accusing him of committing crimes with which he was not charged. Although appellant was charged with a single count of murder as a result of the fire and was only charged with aggravated assault against the other five victims, the prosecutor was not precluded from arguing appellant possessed the specific intent to kill all six victims. Specific intent to kill necessarily includes the intent required to establish aggravated assault, *i.e.*, the intentional, knowing, or reckless infliction of serious bodily injury. *See Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 24 (1994) (intent necessary to establish specific intent to kill greater than and necessarily includes intent required to establish aggravated assault); *see also* 18 Pa.C.S. § 2702. Appellant fails to establish the impropriety of the prosecutor's statement and counsel will not be deemed ineffective for failing to raise a baseless objection. *See, e.g., Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208, 213 (1983) (citing *Commonwealth v. Arthur*, 488 Pa. 262, 412 A.2d 498 (1980)) (counsel will not be deemed ineffective for failing to raise baseless or frivolous issues).

In addition, we reject appellant's claim that both trial and appellate counsel were ineffective for failing to challenge the prosecutor's remarks during his penalty phase summation. Appellant asserts the prosecutor committed misconduct when he asked the jury to show no mercy toward appellant. Brief of Appellant, at 78 (citing N.T. Trial, 11/6/95, at 112–13). The

statement in question does not, as appellant asserts, ask the jury to refrain from showing appellant mercy. It states:

[O]ne family's tears now are not any worse or any better than one family's fear a year ago when they lost a loved one. Your decision is simply a question of law. And I didn't ask you then and I'm not going to ask you to be influenced or swayed by any passion or sorrow you might feel for anyone.

*Id.*, at 77 (citing N.T. Trial, 11/6/95, at 106).

In addition, appellant disputes the prosecutor's request that the jury reject appellant's age as a mitigating factor, since he was almost 25 years old at the time of the murder and therefore, old enough to "appreciate his criminality." *Id.*, at 78 (citing N.T. Trial, 11/6/95, at 112–13).

▆▆▆▆ "When arguing to the jury during the sentencing phase of a defendant's trial, a prosecutor must be afforded reasonable latitude and may invoke oratorical flair ... [since] the presumption of innocence is no longer applicable." *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220, 268 (2006) (citations omitted). In addition:

In order to obtain relief for alleged prosecutorial "misconduct," a petitioner must first demonstrate that the prosecutor's action violated some statutorily or constitutionally protected right ... [and] the prosecutor's challenged comments [must have] the unavoidable effect of prejudicing the jury with such animus toward the defendant as to render it incapable of fairly weighing the evidence....

*Id.*, at 236–37 (citations omitted). We agree with the Commonwealth that *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871 (1998) establishes the appropriateness of the prosecutor's statement. *See* Brief of Appellee, at 56 (citing *Bardo*, at 875–76 ("in pointing out that the case was not about sympathy, the prosecutor was only stating the Commonwealth's view of the case.... [His] comments were no more than his view of the legal significance of appellant's plea for mercy, and as such, could not have the effect of forming a fixed bias or hostility toward the appellant.")). We agree that the prosecutor's argument regarding appellant's age was not

improper in light of *Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242 (1998), which held, "[a] prosecutor may argue to the jury that it should not attach any substantial weight to mitigating circumstances presented by the defense." *Copenhefer*, at 257–58. Appellant's layered ineffectiveness claim fails the arguable merit prong of *Pierce*. Since appellant has failed to establish the arguable merit of the underlying claims of error, his layered ineffectiveness claim fails the *Pierce* test.

Appellant next argues the aggravating circumstance at 42 Pa.C.S. § 9711(d)(7) is unconstitutionally vague and overbroad, and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to object to its use. This argument lacks arguable merit; we previously determined § 9711(d)(7) is not unconstitutionally vague on its face. *See Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 261 (1988). We again upheld § 9711(d)(7) against a vagueness challenge in *Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710, 723 (1992). Appellant presents no argument distinguishing the instant case from the above cases, nor does he present any compelling reason to reconsider the above decisions. Furthermore, appellant fails to establish counsel's failure to challenge the aggravator was unreasonable in light of the controlling case law.

Appellant also argues counsel was ineffective for failing to raise and litigate the prosecutor's use of peremptory challenges in a racially discriminatory manner. In response, the Commonwealth asserts appellant "failed to establish a *prima facie* case of discrimination . . . . [by] setting forth the race of the entire venire, the race of the jurors selected, the race of those struck by the Commonwealth, as well as the race of those struck by the defense." Brief of Appellee, at 27 (citing *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1045–46 (1999)). We agree with the Commonwealth that appellant has not met his burden as set forth in *Holloway*, and we thus conclude appellant's claim of ineffectiveness in this regard is without arguable merit.

 Appellant asserts trial counsel was ineffective for failing to investigate and present mitigating evidence of his abusive childhood, mental illness, and substance abuse. On direct appeal, this Court squarely rejected this claim of counsel ineffectiveness since "[t]he record reflects that counsel presented nine witnesses in support of these mitigating factors." *Gwynn*, at 154. Therefore, this claim of trial counsel ineffectiveness was previously litigated on direct appeal.[9]

 Appellant next asserts he is entitled to a new sentencing hearing because the court's following instruction permitted the jury to consider irrelevant and inflammatory evidence:

Court: You should consider all the evidence and arguments of both the Commonwealth and the defendant, including the evidence you heard during the earlier trial.

N.T. Trial, 11/6/95, at 154. He further asserts appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to object to the instruction and its incorporation of extraneous evidence that was unrelated to the statutory aggravators.

On direct appeal, however, appellant challenged the penalty phase court's failure to instruct the jury it could not consider the arrest warrants introduced at the guilt phase. He also challenged counsel's ineffectiveness for failing to request such an instruction. We held the court did not err in failing to give such an instruction since it gave a limiting instruction when that evidence was introduced and also instructed the jury at the penalty phase to consider the two proposed aggravating

9. The concurring and dissenting opinion suggests the majority fails to address the associated claim that appellate counsel was also ineffective for failing to investigate and adduce life history and mental health mitigation evidence on direct appeal. *See Commonwealth v. Gwynn*, 596 Pa. 398, 943 A.2d 940, 2008 WL 732422 (2008) (Saylor, J., concurring and dissenting). This distinct claim of appellate counsel's ineffectiveness, however, was not developed beyond a mere boilerplate allegation, and therefore merits no review. *See Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003). As appellant's brief was filed in 2004, a year after *McGill*, the requirements for preserving and pleading a claim of appellate counsel's ineffectiveness were delineated and known to appellant, and his failure to comply with them forfeits review of this issue.

factors in determining appellant's sentence. *Gwynn,* at 153. We stated counsel's decision not to request such an instruction could have been a reasonable strategy since such an instruction would have reminded the jury of the arrests. *Id.* The underlying claim of error and counsel's ineffectiveness in this regard have already been considered and ruled upon on direct appeal.

Appellant next asserts this Court's proportionality review on direct appeal violated his right to meaningful appellate review.[10] Appellant's claim is not cognizable under the PCRA as he fails to rationalize how this alleged error "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). This Court has previously rejected such claims and held our former proportionality review practices comported with statutory requirements. *See, e.g., Commonwealth v. Marshall,* 571 Pa. 289, 812 A.2d 539, 551–52 (2002); *Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426, 440–41 (1997).

In its instructions to the jury at the penalty phase of appellant's trial, the trial court stated, "[t]he [S]entencing [C]ode defines aggravating and mitigating circumstances. Now, they are things that make a First Degree Murder case more terrible or less terrible." Brief of Appellant, at 88 (citing N.T. Trial, 11/6/95, at 141). Appellant asserts this instruction improperly limited the significance of the mitigating factors since it required the jury to first find that each mitigator somehow made the fact of the victim's murder less terrible before that mitigator could be weighed by the jury in its sentencing deliberations. He asserts no mitigating circumstance could ever make the fact of a victim's murder any less

10. The statute governing proportionality review in effect at the time of appellant's direct appeal provided, "[t]he Supreme Court shall affirm the sentence of death unless it determines that the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant." 42 Pa.C.S. § 9711(h)(3)(iii). This subsection was repealed in 1997.

terrible, and therefore no mitigating circumstance will ever be given any weight by a jury.

As the Commonwealth correctly points out, "this Court has rejected this precise argument." Brief of Appellee, at 62 (citing *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763, 779–80 (1998) (upholding court's description of aggravating circumstances and mitigating circumstances as those making murder more or less terrible in case where trial court specifically explained each mitigating circumstance to jury); *Commonwealth v. Saranchak*, 544 Pa. 158, 675 A.2d 268 (1996) (rejecting challenge to instruction describing aggravating and mitigating circumstances as things that make murder case more or less terrible on basis trial court's entire instruction explained mitigating circumstances at issue)). Here, the trial court's instruction fully explained each mitigating circumstance presented. *See* N.T. Trial, 11/6/95, at 141–48. Thus, appellant has failed to establish the arguable merit prong of the *Pierce* test for ineffectiveness.

Lastly, appellant argues the trial court erred by failing to instruct the jury that a life sentence in Pennsylvania means life without parole. Appellant fails to assert that this claim of trial court error qualifies as a cognizable claim under the PCRA.[11] Moreover, this Court addressed and rejected this claim of trial court error on direct appeal. *See Gwynn*, at 153–54. We therefore affirm the PCRA court's dismissal with regard to all of appellant's claims.

Order affirmed. Jurisdiction relinquished.

Chief Justice CASTILLE and Justice McCAFFERY join the opinion.

Justice BAER files a concurring opinion.

Justice SAYLOR files a concurring and dissenting opinion in which Justice TODD joins.

---

11. *See* 42 Pa.C.S. § 9543(a)(2) (setting forth claims that may be asserted under PCRA).

Justice BAER, concurring.

I join the majority in full with respect to its denial of Appellant's guilt-phase claims. I write separately, however, because I cannot give prosecutors free reign during closing arguments to exaggerate charges against criminal defendants. In this case, Appellant was charged with a single count of murder with respect to the killing of Marsha Smith, and five counts of aggravated assault with respect to the other five victims, none of whom passed away. Nevertheless, in his guilt phase closing statement, the prosecutor argued, "[Appellant] made a conscious decision to murder six people." [1]

In finding this statement permissible, the majority relies on *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 24 (1994), which held that, for purposes of sentencing merger, the *mens rea* required to establish aggravated assault, *i.e.*, the intentional, knowing, or reckless infliction of serious bodily injury, is subsumed within the *mens rea* for attempted murder, *i.e.*, the specific intent to kill. *See* 18 Pa.C.S. § 2702(a)(1) (aggravated assault); 18 Pa.C.S. §§ 901(a), 2502(a) (attempted murder). This discussion in *Anderson* was one part of a comparison aimed at deciding if the former was a lesser-included offense of the latter. Ultimately, this Court determined that it was. Although I agree with this holding, I do not believe that our decision in *Anderson* should be read to countenance the conflating of separate lesser crimes with greater crimes during a prosecutor's closing statement to intimate that a defendant's conduct amounts to the greater crime, for which he was not charged or tried.

Accordingly, while I would characterize the prosecutor's closing statement in this instance as hyperbole beyond acceptable oratorical flair, *see Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 542 (2006) (stating that the prosecution is accorded reasonable latitude to employ oratorical flair in

1. There is the separate crime of attempted murder, *see* 18 Pa.C.S. §§ 901(a), 2502(a), which includes the specific intent to kill as an element. *See Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 24 (1994) (stating that attempted murder requires a specific intent to kill). If the Commonwealth wanted to argue Appellant intended to kill six people, it should have so charged him.

arguing its version of the case to the jury), I would neverthe-less conclude that the error was harmless. The well-settled standard for analyzing a prosecutor's closing comment directs that we consider whether the unavoidable effect of the state-ment would be to prejudice the jury, "forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Williams,* 896 A.2d at 542; *Commonwealth v. Ford,* 539 Pa. 85, 650 A.2d 433, 442 (1994); *Commonwealth v. McNeal,* 456 Pa. 394, 319 A.2d 669, 673 (1974).

Applying this standard, I would not consider the prosecu-tor's statement sufficiently prejudicial to impair the jury's ability to weigh the evidence objectively and render a true verdict. Appellant claims he was prejudiced at sentencing by the prosecutor's guilt-phase comment, but it is unreasonable to conclude that the same jury that convicted appellant of one murder and six aggravated assaults would fail to make this distinction at sentencing. Consequently, under these facts, I find Appellant's challenge to the prosecutor's guilt-phase com-ments harmless error.

Justice SAYLOR, concurring and dissenting.

I concur in the result with respect to the denial of Appel-lant's guilt-phase claims. However, as to Appellant's claim of ineffective stewardship on the part of his trial and direct-appeal counsel related to the alleged failure to investigate and present available mitigation evidence, I would remand for a further hearing, as well as findings of fact and conclusions of law from the PCRA court.

In reviewing claims of deficient stewardship associated with the presentation of mitigating evidence, an evaluation of the adequacy of counsel's underlying investigation is a threshold inquiry. *See, e.g., Commonwealth v. Malloy,* 579 Pa. 425, 454, 856 A.2d 767, 784 (2004). This is so because strategic judg-ments made by counsel are assessed in light of the reasonable-ness of the investigation performed. *See id.* at 460, 856 A.2d at 788 (citing *Wiggins v. Smith,* 539 U.S. 510, 528, 123 S.Ct. 2527, 2539, 156 L.Ed.2d 471 (2003)). *See generally Williams*

*v. Taylor*, 529 U.S. 362, 364, 120 S.Ct. 1495, 1498, 146 L.Ed.2d 389 (2000) (explaining that capital counsel have the "obligation to conduct a thorough investigation").

In the present matter, Appellant has submitted witness declarations presenting a factual issue concerning the adequacy of his trial counsel's investigation. According to various witnesses, counsel spent less than an hour meeting with Appellant's family, did not explain the family's potential role as mitigation witnesses at the penalty phase of trial, and did not inquire about Appellant's childhood or background. For example, Appellant's younger sister indicated as follows:

> [Trial counsel] never explained the purpose of the sentencing hearing beyond telling us to beg for Danny's life. He never told us anything about mitigation, the possibility of a sentencing hearing, or what it meant to Danny's case. There was no preparation, no questions asked or answered and no explanation of what we could say beyond asking for his life. In fact, [trial counsel] never asked us anything about [Appellant].

Affidavit of Regina Cook at ¶ 6. Appellant has also submitted evidence concerning additional life-history and mental-health mitigation, which I believe warrant assessment, in the first instance, by a fact finder. These include accounts of abuse and neglect, expert opinion of a psychiatrist and a psychologist concerning the impact of the abuse on Appellant's mental health, and opinion evidence that Appellant suffered from major mental-health disorders. Notably, the weighing decision in a capital case by definition involves matters of degree, *see Commonwealth v. Brown*, 538 Pa. 410, 429, 648 A.2d 1177, 1186 (1994), and although life-history mitigation was introduced at Appellant's capital sentencing hearing, his post-conviction proffer contains a good deal more information.[1]

---

1. Although the Court on direct appeal highlighted that nine witnesses testified at the penalty phase of Appellant's trial, the testimony from several of those witnesses was very brief and limited in scope. For example, after merely confirming that Appellant had lived with her, the balance of the testimony from Appellant's grandmother proceeded as follows:

The majority summarily rejects Appellant's ineffectiveness claim as previously litigated on direct appeal. *See* Majority Opinion, at 950. It fails, however, to address the substance of Appellant's associated claim that his counsel on direct appeal rendered deficient stewardship by failing to investigate and adduce the life-history and mental-health mitigation which he now seeks to present to a fact finder. Under the *Collins* decision, which the majority references, this is a separate and distinct claim that is not subject to the previous litigation bar and warrants independent treatment. *See Commonwealth v. Collins*, 585 Pa. 45, 60–61, 888 A.2d 564, 573 (2005) ("[I]neffectiveness claims are distinct from those claims that are raised on direct appeal. The former challenge the adequacy of representation rather than the conviction of the defendant."). While *Collins* noted that the controlling reasoning on direct appeal may be dispositive, it also clearly required a fresh look in addressing derivative claims. *See id.* ("Ultimately, the claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal, but a Sixth Amendment claim raises a distinct issue for purposes of the PCRA and must be treated as such.").

In a footnote responsive to this opinion, the majority indicates that the derivative claim was not set forth with sufficient detail to avoid waiver. *See id.* at 950 n. 9. There has always been a conceptual tension involved in such conclusions, since a primary method of demonstrating deficiencies in the stewardship of appellate counsel lies in demonstrating the obviousness and strength of the underlying claim that such counsel is alleged to have overlooked. *See Commonwealth v. Williams*, 566 Pa. 553, 567 n. 5, 782 A.2d 517, 526 n. 5 (2001). Indeed, viewed from this perspective, Appellant in fact has advanced a

Q. Is there anything that you want to say to this jury at this time in order to influence that jury to spare your grandson's life?
A. Yes.
Q. You tell them. Speak loud and clear.
A. Yes. He's not a bad person. So I just wish they would spare his life.
Q. You have to speak louder.
A. I said he's not a bad person so I ask they spare his life. That's all.
N.T., November 6, 1995, at 38–39.

substantially developed argument concerning his appellate counsel's performance in his appellate brief. For this reason, I generally had favored affording a degree of leeway in the application of the waiver doctrine in such situations, particularly given the significance of the petitioner's interests involved. *See Commonwealth v. Marinelli*, 589 Pa. 682, 714, 910 A.2d 672, 690–91 (2006) (Saylor, J., concurring). I recognize, however, that the Court adopted a more formalistic approach to derivative claims in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003), as a compromise designed to overcome various differences among Justices concerning the degree of required development. Nevertheless, I also have favored the allowance of some time for *McGill* to become institutionalized among the capital bar, as we certainly have not seen immediate, consistent, or even ordinary compliance. However, my personal tolerance expired in November 2006, with the issuance of *Marinelli*, in which I indicated that I would no longer maintain a minority position supporting temporary leeway for briefs failing to meet *McGill's* specific requirements. *See Marinelli*, 589 Pa. at 714–15, 910 A.2d at 691 (Saylor, J., concurring).[2] In this regard, however, the present matter was submitted well before *Marinelli* was rendered. Accordingly, I have reviewed Appellant's claims regarding appellate counsel's stewardship and remain of the belief that a remand for further proceedings is warranted.

Justice TODD joins this concurring and dissenting opinion.

2. It should be noted, however, that in these cases in which the Court is criticizing capital post-conviction counsel for the inability even to attempt to frame a claim in the only established manner in which review can be obtained, we are openly confirming a patent deficiency in such counsel's stewardship. It certainly remains arguable that ineptitude of this sort and magnitude should not redound to the detriment of an indigent petitioner pursuing what is likely to be his single opportunity to secure state post-conviction appellate review of his sentence of death.