J-S27017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICHARD E. TOKARCIK, JR. | : | |
| | : | |
| Appellant | : | No. 25 WDA 2021 |

Appeal from the PCRA Order Entered October 20, 2020
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000132-2017

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED:  March 11, 2022**

Appellant Richard E. Tokarcik, Jr. appeals *pro se* from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition.  This case returns to us after we remanded the matter to the PCRA court to prepare a supplemental opinion.  Appellant argues that his trial counsel was ineffective because counsel failed to object to the admission of hearsay testimony at trial, challenge the trial court's order denying his motion to suppress, and challenge the sufficiency of the evidence.  We affirm.

A previous panel of this Court summarized the facts and procedural history of this case as follows:

> Officer [Andrew] Turnbull learned on January 6, 2017 that an individual going by the name "Adam" had been sending sexually

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

explicit texts to three underage girls. He believed the texter to be an older man based on references he made to his penis and his claim to be of the same generation as a "62-year-old grandmother."

After attempting unsuccessfully to call the suspect, Turnbull began texting him as the 16-year-old "Jamie" and her [15]-year-old sister, "Sam." Two days later, after exchanging sexually explicit texts, among which the suspect described his genitalia, the "three" decided to arrange a meeting. The suspect initially suggested a rendezvous at "Diamond J" truck stop, which confirmed to Turnbull that the man [with whom] he was communicating was older since the truck stop had not been known by that name in the officer's lifetime, but the "three" ultimately agreed to meet at a location on the southeast side of Brookville. The suspect texted "Jamie" just after midnight on January 8[, 2017] to say he was en route.

Once the suspect and his would-be "victims" had agreed on a destination, Turnbull updated Officer [Justin] Miller, who parked his patrol car on a street the suspect would have to pass on his way to meet "Jamie" and "Sam." Pursuant to the plan he had discussed with his colleague, Miller was planning to stop the suspect. He knew he was looking for an older model vehicle, which Turnbull had surmised from the suspect's references to the fact that it rattled and "did not even have a CD player."

Although the suspect expressed some reservations about the meet-up, he ultimately arrived in the borough and spoke with "Jamie" to advise her that he was at the carwash near Hilltop, a convenience market and gas station situated adjacent to the car wash. Though he had attempted to channel his best high-pitched female voice, Officer Turnbull was concerned that he had spoiled the ruse and immediately alerted Officer Miller.

Looking toward state route 322, Miller saw an older pick-up truck turning left onto Evans Street. He knew that the only places from which it could be coming were the car wash parking lot and a nearby dirt road. He also knew that the suspect had told Turnbull moments earlier that he was at the carwash and that the truck's direction of travel was consistent with where the unlawful encounter was scheduled to take place. Aware that traffic in Brookville tended to be sparse at 1:18 a.m., therefore, the officer believed he was looking at the perpetrator's truck. He thus turned around at the carwash and, engaging his siren and emergency

lights, stopped the vehicle on Ridge Avenue, a residential street lined with homes and illuminated by a street light.

Employing his employer's designated procedures for high-risk and felony stops, Miller exited the patrol vehicle, drew his gun, and, ordered the suspect, whom he later learned was [Appellant], to get out of the truck and lie face-down on the ground. His back to the officer the entire time, [Appellant] complied. He thus did not see that Miller had a gun. He testified, however, that he assumed as much from things he had seen on television.

Turnbull arrived a few minutes later and was quickly able to ascertain that [Appellant] was in fact an older man driving an older vehicle. He thus detained him for further investigation, which included checking him for weapons and placing him in handcuffs. Within moments of his arrival, Turnbull was helping [Appellant] to his feet and escorting him to the back of his own truck, where he took a seat on the bumper.

[After reading Appellant his **Miranda**[fn2] rights, Officer Turnbull asked Appellant] whether he knew what was going on[.] [Appellant] said he knew "they" had the messages, at which point Turnbull retrieved his cell phone and dialed the phone numbers from which "Jamie" and "Sam" had received the subject texts and recent phone call. Both phones rang from inside [Appellant]'s truck[.] . . . He completed that transaction by putting [Appellant] in the back of Miller's patrol cruiser . . . . A tow truck was then called to remove [Appellant]'s vehicle from the scene.

[fn2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[Appellant] related a somewhat different scenario. He agreed that Officer Turnbull asked whether he knew what was going on and conceded that his answer may have been consistent with the officer's testimony. He testified, however, that he was never advised that he was under arrest; that neither officer spoke to him while he lay on the ground, during the few minutes he sat on his truck's bumper, or as he was placed into the police cruiser; and that [Officer Turnbull's] first words to him were, "You have the right to remain silent," which he indicated were given only after he had been in the back seat for a few minutes, restrained not only by handcuffs, but also by the officer standing directly outside his closed door. He thus believed he was under arrest, he said, from the moment Officer Miller ordered him to exit his vehicle.

Following his arrest, Appellant was charged with numerous sex crimes. On September 22, 2017, Appellant filed a pre-trial motion to suppress evidence from his vehicle stop and subsequent detention. Appellant averred that Officers Miller and Turnbull placed him under arrest immediately upon stopping his vehicle and did not have probable cause to do so. On September 28, 2017, following a hearing, the trial court denied the motion.

On October 18, 2017, Appellant filed a motion to reconsider the denial of his suppression motion. In his motion, Appellant contested the veracity of Officer Turnbull's testimony that when he called the suspect's phone numbers during the stop, the phones in Appellant's vehicle rang. Appellant argued that the call logs for the cell phones recovered from his vehicle did not contain calls from Officer Turnbull at the time immediately preceding his arrest. Consequently, he asserted that the officers lacked probable cause to arrest him. The same day, the trial court denied Appellant's motion for reconsideration.

On October 19, 201[7], a jury found Appellant guilty of [criminal attempt – statutory sexual assault, unlawful contact with a minor (relating to sexual abuse of children), criminal solicitation – child pornography, criminal attempt – corruption of minors, corruption of minors, and criminal use of a communication facility.[2]]. On February 7, 2018, the trial court sentenced Appellant to an aggregate term of 10 to 20 years of incarceration. Appellant filed a timely post-sentence motion, which the trial court denied on March 28, 2018.

***Commonwealth v. Tokarcik***, 741 WDA 2018, 2019 WL 5595843 at *1-2 (Pa. Super. filed Oct. 30, 2019) (unpublished mem.) (some citations omitted and formatting altered), *appeal denied*, 233 A.3d 678 (Pa. 2020).

On direct appeal, Appellant argued that the suppression court erred by denying his motion to suppress. ***Id.***, 2019 WL 5595843 at *3. This Court affirmed Appellant's judgment of sentence on October 30, 2019, and our

---

[2] 18 Pa.C.S. §§ 901(a), 3122.1(b); 6318(a)(5); 902(a), 6312(d); 901(a), 6301(a)(1)(i); 6301(a)(1)(i); and 7512(a), respectively.

Supreme Court denied Appellant's petition for allowance of appeal on May 13, 2020. *See id.* at *6, *appeal denied*, 233 A.3d 678 (Pa. 2020).

Appellant filed a timely *pro se* first PCRA petition raising multiple claims of trial counsel's ineffectiveness. Among those claims were that trial counsel failed to object to the admission of text messages at trial, failed to challenge the trial court's denial of his suppression motion, and failed to challenge the sufficiency of the evidence. *Pro Se* PCRA Pet., 6/4/20, at 2-3.

The PCRA court appointed George Daghir, Esq. (PCRA counsel) to represent Appellant. On September 10, 2020, PCRA counsel filed a *Turner*/*Finley*[3] no-merit letter and a motion for leave to withdraw. Subsequently, on September 18, 2020, the PCRA court issued its notice of intent to dismiss Appellant's PCRA petition without hearing pursuant to Pa.R.Crim.P. 907 and granted PCRA counsel's motion to withdraw. Appellant filed a *pro se* response to the Rule 907 notice on October 12, 2018. On October 20, 2020, the PCRA court dismissed Appellant's PCRA petition.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a Rule 1925(a) opinion adopting PCRA counsel's no-merit letter and concluding that Appellant's claims of procedural misconduct were waived. *See* PCRA Ct. Op., 2/23/21, at 1.

---

[3] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On November 2, 2021, this Court remanded this case for the PCRA court to prepare a supplemental Rule 1925(a) opinion addressing the merits of Appellant's claims.[4] On November 9, 2021, the PCRA court issued its supplemental Rule 1925(a) opinion concluding that Appellant's issues were meritless. PCRA Ct. Op., 11/9/21, at 2-7. We permitted the parties to file supplemental briefs.[5]

Appellant raises four issues for our review:

1. Was trial counsel ineffective for failing to object to the admission of the text messages as hearsay offered for the truth of the matter asserted, where the text messages were not properly authenticated, and the author could be ascertained as "Adam", someone other than Appellant?

2. Was trial counsel ineffective for failing to object to the court's finding of facts that established reasonable suspicion for the traffic stop, and probable cause to arrest that was not supported by the record?

3. Was trial counsel ineffective for failing to object that the finder of fact [erred] in finding sufficient evidence to prove all the requisite elements of each crime beyond a reasonable [doubt], where the evidence presented was that of text messages whose sender was not determined to be Appellant, and there was no other evidence that a crime had been committed?

4. Did the court commit [an] abuse of discretion in dismissing Appellant's PCRA [petition] where the record reveals counsel's ineffectiveness?

Appellant's Brief at 4 (formatting altered).

_____

[4] This Court also concluded that Appellant's claims of prosecutorial misconduct were waived. *See Commonwealth v. Tokarcik*, 25 WDA 2021, 2021 WL 5104284 at *2 n.4 (Pa. Super. filed Nov. 2, 2021) (unpublished mem.).

[5] The Commonwealth did not file any briefs.

All of Appellant's PCRA issues challenge trial counsel's effectiveness. In reviewing these issues, we are guided by the following principles:

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered).

We presume that the defendant's counsel was effective. *See Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007). This Court has explained that

> to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> *    *    *
>
> Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (citations omitted and formatting altered).

This Court has explained that when presenting issues in an appellate brief that

> it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Pa.R.A.P. 2119(a), (b), (c). . . .
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. Pa.R.A.P. 2101.

*Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (some citations omitted).

"Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1037-38 (Pa. Super. 2018) (citation omitted).

### IAC – Failure to Object to Text Messages

In his first issue, Appellant argues that trial counsel was ineffective for failing to object to admission of text messages at trial as hearsay and because they had not been authenticated. Appellant's Brief at 10-14; Appellant's Supp. Brief at 3-5. Appellant contends that if the text messages were not admitted, there is a reasonable probability that the outcome of the trial would have been different. Appellant's Brief at 14; Appellant's Supp. Brief at 5.

Initially, we note that while Appellant discusses the merits of the underlying evidentiary issue, he has failed to develop any meaningful

argument regarding trial counsel's ineffectiveness other than a bald assertion of prejudice. *See* Pa.R.A.P. 2119(a); *see also Sandusky*, 203 A.3d at 1043-44. Therefore, we must conclude that this claim is waived. *See Kane*, 10 A.3d at 331 (stating that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant").

In any event, the PCRA found that Appellant's claim had no arguable merit. Specifically, the court explained:

> [Trial counsel] had no basis upon which to lodge an objection. It had already been established prior to trial that "Adam" was the fictitious name [Appellant] was using to communicate with his victims. That being the case, the text messages he sent to "Sam" and "Jaime" were properly admitted as statements of a party opponent that the Rules of Evidence expressly recognized as exceptions to the hearsay rule. Pa.R.Evid. 803(25). The messages were fully authenticated, moreover, in that Officer Turnbull identified they phone number from which the originated, confirmed that it was registered to [Appellant], and confirmed that the cell phone to which that number was attached was in [Appellant's] possession at the time of his arrest.

PCRA Ct. Op., 11/9/21, at 2-3 (some citations omitted).

We agree with the PCRA court. Therefore, even if Appellant had not waived this claim, we would conclude that he is not entitled to relief.

### IAC – Suppression

Appellant next argues that trial counsel was ineffective for failing to object to the suppression court's findings of fact, which he claims were unsupported by the record. Appellant's Brief at 14-18. Appellant asserts that the officers' testimony was insufficient to establish reasonable suspicion or probable cause to stop Appellant. *Id.* at 17.

Although Appellant argues the underlying suppression issue, he has failed to develop his ineffectiveness claim with any discussion of the required elements to prove his claim. Accordingly, we conclude that Appellant has waived this issue. *See* Pa.R.A.P. 2119(a); *Kane*, 10 A.3d at 331.

The PCRA court did not specifically address the arguable merit prong of this claim,[6] but the court reiterated that it credited the officers' testimony at the suppression hearing and found that police had probable cause for the arrest. *See* PCRA Ct. Op., 11/9/21, at 2. The PCRA court also noted that Appellant had challenged the trial court's denial of his motion to suppress on direct appeal. *See id.* at 6-7. Therefore, even if Appellant had not waived his ineffectiveness claim, he would not be entitled to relief, because appellate counsel challenged the suppression court's ruling on direct appeal, and this Court affirmed Appellant's judgment of sentence. Accordingly, the underlying issue was litigated on direct appeal. *See e.g.*, *Commonwealth v. Gwynn*, 943 A.2d 940, 946 (Pa. 2008) (concluding that the petitioner's "claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal is meritless since it was, in fact, raised").

**IAC – Sufficiency of the Evidence**

The third issue Appellant raises on appeal is that trial counsel was ineffective for failing to challenge the sufficiency of the evidence identifying

---

[6] The PCRA court addressed other claims of trial counsel's ineffectiveness regarding the suppression hearing including the failure to obtain cell phone records and photographs of the road on which Appellant was stopped to contradict the testimony of the officers. *See* PCRA Ct. Op., 11/9/21, at 2.

him as the perpetrator. ***See*** Appellant's Brief at 4 (statement of questions involved). However, Appellant abandoned that issue by not arguing it in his brief. ***See Commonwealth v. Felder***, 247 A.3d 14, 20 (Pa. Super. 2021) (stating that "an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted and formatting altered)).

## Additional PCRA Claims

In his final issue, Appellant claims that the PCRA court erred in denying his petition because the record indicates that trial counsel was ineffective. Appellant's Brief at 4. Specifically, Appellant claims:

> Appellant has discovered multiple errors by counsel that caused prejudice to Appellant. Failure to object; when the prosecution asked leading questions to their own witness. Many were not questions at all, but, statements w[h]ere the stenogra[ph]er simply entered a question mark[.] The court did not charge the jury for the prosecution's failure to supply the audio/video recording from the patrol car[.] All of the elements for entrapment were met. These errors were more than mere harmless error.

***Id.*** at 18 (some formatting altered).

Appellant has failed to develop any meaningful argument regarding these various claims of trial counsel ineffectiveness in his brief. ***See*** Pa.R.A.P. 2119(a). Likewise, Appellant does not provide any citations to the record or otherwise specify where these alleged errors occurred. ***See*** Pa.R.A.P. 2119(c). Therefore, we conclude that these claims are waived. ***See Kane***, 10 A.3d at 331. For these reasons, we affirm the PCRA court's order.

- 11 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2022