J-A04029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
SEAN CARTER   :
  :
Appellant   :   No. 902 EDA 2021

Appeal from the PCRA Order Entered April 21, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004485-2013

BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:      **FILED MARCH 15, 2022**

Appellant Sean Carter appeals from the order denying his timely first

Post Conviction Relief Act[1] (PCRA) petition without a hearing. Appellant

contends that his trial and appellate counsel were ineffective in their

representation. We affirm.

A prior panel of this Court adopted the following factual history:

The . . . charges arose out of incidents that occurred in the late
summer of 2012, during which [A]ppellant injured I.H., a two-year
old child in his care,[FN2] causing her to suffer a knife wound to her
head as well as an injury to her left hand and other parts of her
that required her to be hospitalized and undergo surgery for a
fractured skull.

> [FN2] Appellant agreed to care for I.H. while her mother was
> enrolled in a drug rehabilitation program.

On September 19, 2012, [when Appellant was serving as I.H.'s
guardian], she was transported by an ambulance to St.

---

[1] 42 Pa.C.S. § 9541-9546.

Christopher's Hospital in Philadelphia. Upon examination, I.H. was deemed to have a five[-] to six[-]centimeter[-]long laceration to her skull and an injury to her left hand as well as bruising to various parts of her body. [Appellant] stated that the injury to her skull was caused by a large chopping knife that accidentally fell a couple of feet off of the top of a counter as he was washing dishes and the injury to her hand was self-inflicted by I.H. herself when she began flailing about in a bathtub as [Appellant] attempted to clean the wound to her head. He further stated that as he was calling for an ambulance, I.H. fell down some steps. He added that the bruises on I.H.'s buttocks resulted from her having to wear diapers and a bruise on her leg was from a bug bite.

An examination of I.H.'s skull revealed that it had been fractured and a membrane around her skull had been penetrated by the knife. I.H. also had bleeding under her skull caused by an injury to another part of her skull, which damaged part of her brain and which was not caused by having been stuck with the knife. Due to the severity of the knife wound, I.H. had to undergo surgery to repair the fracture and the damage to her scalp and the membrane around her skull.

In addition to the laceration, skull fracture, and bruising to her brain, I.H. also had bruises on various parts of her body, including her left thigh, buttocks, chin, ankle, top of the knee and on both sides of her left hand.

Dr. Maria DiGiorgio McColgan, who specialized in ascertaining whether children who have suffered physical injuries were victims of abuse, examined I.H. a day after she was admitted to the hospital and reviewed I.H.'s medical records. Based on that review, the doctor opined that some of the bruises were caused by an implement of some sort such as a hair brush that some of them were not a day old, the bruise on her leg was not caused by a bug bite, and the ones on her buttocks did not result from wearing a diaper. She added that it was also her opinion that the knife wound was not caused in the manner in which [Appellant] said it was given the length of the laceration, the fact that it fractured the victim's skull. She added that because the knife was light in weight it would not have been able to inflict the laceration and fractured skull if the incident had occurred as [Appellant] said it did because the blade of the knife would have had to have contacted I.H's skull perpendicular to it at a faster rate of speed than would have been generated had the knife simply fell off the counter. Finally, the doctor stated that the injuries to I.H's body

were not caused by another young child or by having ridden a tricycle and that I.H. could not have caused the injury to her left hand by flailing about while being treated by [Appellant] because it would have required a larger of amount of force to cause the observed injuries to it.

In addition to reviewing records and examining I.H, Dr. McColgan spoke to I.H. a couple of days after her surgery. I.H. related that "Daddy" had caused her bruises by hitting her with something and also spontaneously said in the presence of a medical student that, "Daddy hit me with a knife." Dr. McColgan noted that the bruising to I.H.'s buttocks caused a high creatine phosphokinase (CPK) level, which the doctor explained could have been caused by the breakdown of muscle tissue as a result of the bruising caused by [strikes] to her body. Finally, she stated that I.H. suffered from developmental difficulties, which could have resulted from being born to a drug [dependent] mother and the abuse she suffered.

Ms. Karen Darelene Montgomery, an employee of the Philadelphia Department of Human Services (hereinafter DHS), interviewed [Appellant] on September 20, 2012, inside the residence where the incident occurred. During the interview, [Appellant] stated that I.H.'s mother permitted him and his paramour to watch I.H. while her mother received drug treatment, that I.H. called him "Daddy" and his paramour "Mommy," and that he was alone with I.H. when she suffered the laceration. [Appellant] further stated that he was doing the dishes and when he placed a pot down on the tip of the knife, the knife flipped into the air and down onto I.H., causing the laceration to her head as she was sitting on the counter. He further stated that he wrapped the injury in a towel, called 911, and took I.H. upstairs to wash the wound. He further stated that while in the tub, I.H. was flailing about and hit her hand on the faucet[,] injuring it. Finally, with regard to a bruise on I.H.'s forehead, [Appellant] surmised that it occurred when I.H. tripped on steps getting out of the bathtub and hit her face, and that other injuries looked like bug bites, not bruises.

After relating the foregoing, [Appellant] took Ms. Montgomery into the kitchen and attempted to replicate what occurred to cause the laceration on I.H.'s head. Using a knife smaller than the one that caused the laceration to I.H. (the actual knife had been confiscated by police), he could not duplicate how I.H. was injured. He also stated that he did not know how I.H.'s buttocks were bruised and said that they could have resulted from her having tried to ride a tricycle at a cookout. Finally, Ms.

- 3 -

Montgomery indicated that when the knife flipped off of the counter, I.H. was sitting on the floor near the corner of the counter and not on top of the counter as he previously stated.

Christine Smolinski, I.H.'s mother, indicated that in August of 2012, she agreed to let [Appellant] take care of I.H. while she received drug treatment. [Appellant] brought I.H. to see her every Sunday. During one of those visits in early September of 2012, as she was leaving, I.H. became anxious and said that she did not want to go back with "Daddy Sean." She also said the same thing to Ms. Smolinski's sister and began crying during that conversation.

Ms. Smolinski visited I.H. in the hospital and I.H. told her that, "Daddy Sean did it[ ]" and that he also caused a bruise that Ms. Smolinski saw when she changed I.H.['s] diaper. She further testified that she noticed a change in I.H., and that when she visited I.H. in the hospital, I.H had injuries that were not present a couple of days before I.H. was taken to the hospital.

Philadelphia Police Officer Tyrone Green of the Special Investigations Unit was assigned to investigate the incident. In the course of doing so, he spoke to [Appellant] at his residence and [Appellant] explained that the cut to I.H.'s head occurred when a knife accidentally fell off of a kitchen counter onto I.H., who was standing or sitting next to [Appellant] as he stood in the kitchen. When Officer Green asked [Appellant] about other bruises on I.H.'s body, [Appellant] said that he thought that some of them may have been caused by spider bites she incurred in her crib and others from him having "popped" her on her hand and twice on her thigh. Officer Green confiscated a knife that [Appellant] said was the one that caused the laceration, which was over eleven inches long, light in weight, and had seven holes above its blade.

*Commonwealth v. Carter*, 2938 EDA 2017, 2018 WL 3122072, at *1-3 (Pa. Super. filed June 26, 2018) (unpublished memorandum), *appeal denied*, 198 A.3d 1054 (Pa. 2018).

Following Appellant's bench trial on October 7, 2016, the trial court convicted Appellant of aggravated assault, endangering the welfare of children

(EWOC), simple assault, possessing instruments of crime (PIC), and recklessly endangering another person (REAP).[2]  On March 23, 2017, the court imposed an aggregate sentence of ten to twenty years of incarceration followed by seven years of probation.  Appellant timely filed a post-sentence motion and, following its denial, a timely notice of appeal.  This Court affirmed his judgment of sentence.

On November 20, 2019, Appellant filed a timely *pro se* PCRA petition.[3] The PCRA court appointed counsel, who filed an amended petition raising ineffectiveness claims against both trial counsel and appellate counsel.  On February 16, 2021, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing.  Appellant filed a response raising an additional claim, namely, that the trial court had shown racial bias at sentencing.[4]  ***See*** *Pro Se* Correspondence, 3/11/21, at 1-2.  On April 21,

_____

[2] 18 Pa.C.S. §§ 2702(a), 4304(a)(1), 907(a), 2701(a), and 2705, respectively.

[3] Appellant's judgment of sentence became final on March 11, 2019, ninety days after Appellant failed to petition the United States Supreme Court for allocatur.  ***See Commonwealth v. Reed***, 107 A.3d 137, 141 (Pa. Super. 2014); ***see also*** 42 Pa.C.S. § 9545(b)(3) (stating that "[f]or purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review").

[4] We recognize that PCRA counsel did not address the claim raised in Appellant's *pro se* response to the court's Rule 907 notice.  However, Appellant was not permitted to litigate issues in his *pro se* response because he was already represented by counsel.  ***See***, ***e.g.***, ***Commonwealth v. Pursell***, 724 A.2d 293, 302 (Pa. 1993) (prohibiting hybrid representation in PCRA
*(Footnote Continued Next Page)*

2021, the court issued an order formally dismissing Appellant's petition without a hearing.

Appellant filed a timely notice of appeal and a timely court-ordered Pa.R.A.P. 1925(b) statement.

On appeal, Appellant raises several issues for our review, which we set forth as follows:

1. Whether the PCRA court erred in finding that appellate counsel was not ineffective for failing to argue that Appellant lacked the requisite *mens rea*?

2. Whether the PCRA court erred in finding that appellate counsel was not ineffective for failing to preserve Appellant's discretionary sentencing claim?

3. Whether the PCRA court erred in finding that trial counsel was not ineffective for failing to object to hearsay testimony?

4. Whether the PCRA court erred in finding that trial counsel was not ineffective for failing to call witnesses to the stand?

5. Whether the PCRA court erred in finding that trial counsel was not ineffective for failing to cross-examine the victim's mother regarding her length criminal record?

Appellant's Brief at 9 (formatting altered).

This Court has explained that

> our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

---

proceedings). Accordingly, while we cannot reach the merits of Appellant's claim, as noted below, it would have been meritless even if properly raised.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019)

(citations omitted and formatting altered).

> Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Id.* at 1043-44 (citations omitted and formatting altered).

Further, it is well settled that

[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations and quotation marks omitted). Lastly, this Court "may affirm the decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm." *Commonwealth v. Wiley*, 966 A.2d 1153, 1157 (Pa. Super. 2009) (citation omitted).

**Layered Ineffectiveness Claims**

Appellant argues that appellate counsel was ineffective for failing to properly craft arguments regarding his *mens rea* and failing to preserve his discretionary sentencing claim. *See* Appellant's Brief at 19-24. Appellant also claims that trial counsel was ineffective for failing to object to alleged hearsay. *Id.* at 24. Finally, Appellant attempted to raise a single claim of PCRA counsel ineffectiveness. *See Pro Se* Correspondence, 3/11/21, at 1-2. Appellant is alleging layered ineffectiveness claims because he contends that both his trial counsel and appellate counsel were ineffective.

Generally, with regard to layered claims of ineffectiveness,

for a petitioner to properly raise and prevail on a layered ineffectiveness claim, sufficient to warrant relief if meritorious, he must plead, present, and prove the ineffectiveness of Counsel 2 (appellate counsel), which as we have seen, necessarily reaches

- 8 -

back to the actions of Counsel 1 (trial counsel). To preserve (plead and present) a claim that Counsel 2 was ineffective in our hypothetical situation, the petitioner must: (1) plead, in his PCRA petition, that Counsel 2 was ineffective for failing to allege that Counsel 1 was ineffective [for not raising the claim]; and (2) present argument on, *i.e.*, develop, each prong of the *Pierce* test as to Counsel 2's representation, in his briefs or other court memoranda. Then, and only then, has the petitioner preserved a layered claim of ineffectiveness for the court to review; then, and only then, can the court proceed to determine whether the petitioner has proved his layered claim.

*Commonwealth v. McGill*, 832 A.2d 1014, 1022 (Pa. 2003).

However, we note that Appellant's first two issues are "stand-alone" claims of ineffective assistance of appellate counsel, *i.e.*, a claim that the underlying issue has been previously litigated by appellate counsel, but in an allegedly ineffective manner. *See*, *e.g.*, *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). To succeed on such claims,

a PCRA petitioner must demonstrate that appellate counsel was ineffective in the manner by which he litigated the claim on appeal. *Paddy*, 15 A.3d at 443; *see also id.* at 476, (C.J. Castille, Concurring) (asserting that "[t]o prevail [on a stand-alone claim of appellate counsel ineffectiveness], the PCRA petitioner must show exactly how appellate counsel was ineffective, by offering additional evidence or controlling authority, missed by direct appeal counsel, that would have changed the appeal outcome; or by specifically alleging the winning claim or distinct legal theory that appellate counsel failed to recognize; and then by showing how the appeal, as pursued, was incompetent by comparison").

*Commonwealth v. Koehler*, 36 A.3d 121, 142 (Pa. 2012). If appellate counsel's representation resulted in a waived claim, the appellant must demonstrate that appellate counsel was ineffective for failing to raise the claim on direct appeal. *Commonwealth v. Tedford*, 960 A.2d 1, 16 (Pa. 2008).

Finally, for claims of appellate counsel ineffectiveness, a petitioner must still prove each of the three underlying elements of the **Strickland** test. **Commonwealth v. D'Amato**, 856 A.2d 806, 812 (Pa. 2004). Appellant must still prove: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. **Sandusky**, 203 A.3d at 1043; **D'Amato**, 856 A.2d at 812.

Appellant's remaining issues are layered claims of ineffectiveness against trial counsel and appellate counsel, which he appropriately raised for the first time in his PCRA petition and in a *pro se* response to the PCRA court's Rule 907 notice. To the extent that we may consider this issue despite hybrid representation, it was appropriately raised before the PCRA court pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), which acknowledged the difficulty in litigating a claim of PCRA counsel ineffectiveness and held:

> We reject the current Rule 907 procedure by which a petitioner may raise claims of ineffective assistance of PCRA counsel as unworkable, and offer a modified and flexible . . . approach allowing a petitioner to raise claims of ineffective PCRA counsel at the first opportunity, even if on appeal. We conclude this approach best recognizes a petitioner's right to effective PCRA counsel while advancing equally legitimate concerns that criminal matters be efficiently and timely concluded.

**Id.** at 405.

## Appellate Counsel's Ineffectiveness

Appellant's first two counseled issues concern the ineffectiveness of appellate counsel. First, he contends that appellate counsel failed to craft an argument analyzing each crime and the required *mens rea* for the crime; and second, that counsel failed to preserve and properly argue Appellant's discretionary sentencing claim. ***See*** Appellant's Brief at 19-24.

Our Supreme Court has held that when this Court finds an issue waived on direct appeal but then determines that the issue is meritless, the ruling on the merits is a valid holding that constitutes the law of the case as to the ruled-upon issue. ***See Commonwealth v. Reed***, 971 A.2d 1216, 1220 (Pa. 2009). Further, because the ruling on the merits of the issue is the law of the case, it constrains this Court's review of the same issue in subsequent collateral proceedings, even if it is nested in a claim of ineffective assistance of counsel. ***See id.***; ***see also Commonwealth v. Gwynn***, 943 A.2d 940, 946 (Pa. 2008) (concluding that the petitioner's "claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal is meritless since it was, in fact, raised").

As noted above, Appellant argues that appellate counsel failed to craft an argument that fully analyzed each element of each crime in relation to the *mens rea* required. Appellant's Brief at 19-22. However, on direct appeal, a panel of this Court concluded that while Appellant's counsel had failed to develop an argument with the appropriate citation to authority and had, accordingly, waived the claim, this Court would have affirmed based on the trial court's analysis. ***Carter***, 2018 WL 3122072, at *3. An examination of

the record shows that the trial court thoroughly analyzed the elements of each crime and the *mens rea* required for each crime and determined that the Commonwealth had proven beyond a reasonable doubt all required elements of each crime. Trial Ct. Op., 10/25/17, at 7-11. Because a previous panel of this Court has ruled on the merits of this issue, appellate counsel cannot be ineffective for failing to raise an issue that was in fact raised, and we cannot conclude at this juncture that the claim has arguable merit. **Gwynn**, 943 A.2d at 946; **Reed**, 971 A.2d at 1220; **Koehler**, 36 A.3d at 142; **Sandusky**, 203 A.3d at 1043-44.

In his second claim of appellate counsel ineffectiveness, Appellant argues that counsel had no reasonable basis for failing to include a Pa.R.A.P. 2119(f) statement in his appellate brief, which resulted in the waiver of his discretionary sentencing claim.[5] Appellant's Brief at 22-24. Appellant contends that "[a]lthough we cannot predict with certainty how the reviewing court would have ruled [had] it been presented with the issue, it is certain that the Appellant suffered actual prejudice." *Id.* at 24.

To succeed on an ineffectiveness claim for failure to preserve a challenge to the discretionary aspects of sentencing, the petitioner must demonstrate a reasonable probability that the underlying sentencing claim entitles the petitioner to relief. **Commonwealth v. Jones,** 942 A.2d 903 (Pa. Super.

---

[5] In his Rule 1925(b) statement, Appellant asserted that the court abused its discretion by imposing an aggregate sentence in the aggravated range and failing to put specific reasons on the record supporting the imposition of an aggravated sentence. Rule 1925(b) Statement, 9/28/17, at ¶ 5.

2008); *see also Commonwealth v. Reaves*, 923 A.2d 1119 (Pa. 2007) (providing that a claim of ineffectiveness for failure to preserve discretionary sentencing issue requires showing of reasonable probability that sentencing court would have imposed a lesser sentence).

Prior to reaching the merits of a challenge to the discretionary aspects of sentencing, we must determine

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Commonwealth v. Rush*, 162 A.3d 530, 543 (Pa. Super. 2017) (citation omitted). The determination of whether there is a substantial question is made on a case-by-case basis. *Id.* "A substantial question exists where a defendant raises a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Id.* (citation and quotation marks omitted). A claim that the trial court departed from the Sentencing Guidelines without appropriate explanation for its sentence may raise a substantial question. *Id.* at 190-92.

However, in the instant case, the court stated the reasons for imposing Appellant's sentence, which was within the standard guideline range. In addressing this issue, the trial court explained:

> [Appellant] should be denied relief on this issue because the sentence imposed was not above the guidelines and thus, there is no basis for [Appellant's] claim. The applicable sentencing

guidelines range for the aggravated assault charge was 90-108 month; plus/minus 12 months, and thus, the sentence was within the guidelines, albeit in the aggravated range. With respect to the charges on which the [c]ourt imposed probation, the guidelines called for terms of incarceration, not probation[,] so those sentences were below the range of sentences recommended by the sentencing guidelines.

. . . . [Appellant] cannot establish that the sentence was unreasonable given the injuries suffered by the two-year[-]old victim, injuries which evidenced that [Appellant] intentionally abused her on several occasions. As this [c]ourt stated just prior to imposing sentence, it was a horrible case, with no explanation and no excuse for the infliction of those injuries.

Trial Ct. Op., 10/25/17, at 16-17 (internal citations to the record omitted). Accordingly, even if appellate counsel had preserved this claim, it would not present a substantial question. *Rush*, 162 A.3d at 543 (stating that a defendant must raise a *plausible* argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process). Moreover, even if we were to conclude that Appellant presented a substantial question, there is no merit to the claim and Appellant would be entitled to no relief because his sentence was within the guidelines and was not unreasonable. *Koehler*, 36 A.3d at 142; *Sandusky*, 203 A.3d at 1043-44.

## Trial Counsel's Infectiveness

Appellant next contends that the PCRA court erred in rejecting his claim that trial counsel failed to object to hearsay testimony. Appellant's Brief at 24. Specifically, Appellant contends that counsel should have made a timely

hearsay objection when I.H.'s mother testified that I.H. told her, "I don't want to go back to Daddy Sean." *Id.*

Appellant attempted to litigate this hearsay claim on direct appeal, and, in affirming his judgment of sentence, this Court found that he had waived the claim for failure to make a timely objection. *See Carter*, 2018 WL 3122072, at 4. This Court further determined that even if the issue had not been waived, it would have affirmed based on the trial court's opinion. *Id.*, *see also* Trial Ct. Op., 10/25/17, at 14-16 (holding that evidence was properly admitted under Pa.R.E. 803(3) as a present sense impression, and that it was relevant evidence because it demonstrated that I.H. was afraid to return to Appellant and supported the theory he was abusing her). As noted previously, where this Court initially finds an issue waived and determines the issue is meritless, the ruling on the merits constitutes the law of the case. *Reed*, 971 A.2d at 1220. Consequently, this issue does not have arguable merit. *Sandusky*, 203 A.3d at 1043-44.

Appellant also argues that trial counsel was ineffective for failing to call his wife, aunt, and grandmother to testify at trial. Appellant's Brief at 25. Appellant claims that the testimony of these witnesses would have contradicted the Commonwealth's version of events, in that certain witnesses would have stated that they saw bruises on I.H. before the stabbing incident and that other bruises could have been caused by I.H.'s clothes or bug bites, and therefore, changed the outcome of the trial. *Id.*

- 15 -

It is axiomatic that when a PCRA petitioner claims counsel was ineffective for failing to call a witness, he or she must establish (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Goodmond***, 190 A.3d 1197, 1202 (Pa. Super. 2018) (formatting altered).

Arguably, based upon the unnotarized affidavits attached as Appendix A to Appellant's amended PCRA petition, the witnesses existed, were available and willing to testify for Appellant, and were known to counsel. ***See*** Amended PCRA Pet., 8/11/20, at Appendix A. However, as noted by the PCRA court,

[A]ppellant did not establish that the testimony of the purported witnesses would have been helpful to his case and that he suffered prejudice. The testimony of the witnesses allegedly would have presented would not have countered the wealth of evidence presented by the Commonwealth that proved beyond a reasonable doubt that [A]ppellant caused the very serious injuries the victim had when she arrived at the hospital.

PCRA Ct. Op., 4/30/21, at 11.[6]

_____

[6] An examination of the affidavits does not contradict the Commonwealth's evidence. Kimberly Carter, Appellant's wife, averred that Ms. Smolinski was unable to care for I.H.; that Appellant was a good father to Ms. Carter's children; and that she had noticed bruises on the child's body in other instances. ***Id.*** Ms. Carter stated "in my heart and gut there is NO way possible [Appellant] could have done this on purpose." ***Id.*** Frances Benjamin, Appellant's grandmother, would have served as a character witness to Appellant's good character and that Ms. Smolinski did not take proper care of I.H. ***Id.*** However, nothing in her affidavit would contradict any of the evidence introduced by the Commonwealth. Sanita Carter, Appellant's aunt,
*(Footnote Continued Next Page)*

This testimony included the expert testimony of Dr. McColgan, who testified at length to the severity of I.H.'s injuries and the fact that they could not have been caused by accident, diaper rash, or bug bites.[7]  N.T. Trial, 10/7/16, 22, 49.  An examination of the record reveals no error in these conclusions and, accordingly, this claim is not of arguable merit.  **Sandusky**, 203 A.3d at 1043-44.

In his final claim, Appellant contends that the PCRA court erred in rejecting his claim that trial counsel was ineffective for failing to cross-examine the victim's mother, Ms. Smolinski, concerning her lengthy criminal record, which included more than ten *crimen falsi* offenses over the last ten years.  Appellant's Brief at 26.  Although Appellant acknowledges that the Commonwealth questioned Ms. Smolinski about her criminal record on direct examination, he contends that the "two questions and answers do not sufficiently detail Ms. Smolinski's criminal record and bad acts."  **Id.** at 27.  Appellant claims that had counsel questioned Ms. Smolinski about her record, "her credibility would have been destroyed" and the outcome of the trial would likely have been different.  **Id.**

---

would have testified regarding I.H.'s "dirty" appearance and clothing when she came into Appellant's care, and that Ms. Smolinski constantly asked Ms. Carter for money.  **Id.**  Further, Ms. Carter claimed that I.H.'s clothes were tight and left marks on her thighs and around her stomach.  **Id.**

[7] Dr. McColgan did concede there were some marks on I.H.'s ankles that could have been bug bites, but those ankle marks were not as severe as the majority of her injuries.  N.T. Trial, 10/7/16, 45-52, 62.

Evidence of a witness's conviction for a crime involving dishonesty or a false statement is generally admissible. Pa.R.E. 609(a). "A failure to so impeach a key witness is considered ineffectiveness in the absence of a reasonable strategic basis for not impeaching." *Commonwealth v. Treiber*, 121 A.3d 435, 456 (Pa. 2015). However, the failure to impeach witnesses with *crimen falsi* convictions will not deprive the defendant of a fair trial where his conviction did not solely rest on the testimony of those witnesses and where some of the witnesses' criminal history was known to the factfinder. *See*, *e.g.*, *Commonwealth v. Solano*, 129 A.3d 1156, 1175-76 (Pa. 2015).

Here, Appellant's amended PCRA petition included an email from trial counsel, who stated that he did not cross-examine Ms. Smolinski about her criminal record because there were already numerous instances in the record detailing Ms. Smolinski issues with addiction and inability to properly care for I.H. *See* Amended PCRA Pet., 8/11/20, at Appendix B.

In addressing this issue, the PCRA court explained:

This [c]ourt denied relief with regard to this claim because the Commonwealth had Ms. Smolinski detail her criminal record and bad acts during its direct examination of her. Moreover, even had trial counsel done so, the outcome of the trial would not have been different because the other evidence the Commonwealth presented was itself sufficient to sustain the verdicts. Thus, [A]ppellant suffered no prejudice as a result of trial counsel's decision not to again elicit that testimony during his cross-examination and the denial of relief on this claim should be affirmed.

PCRA Ct. Op. at 11-12.

The record supports the trial court's conclusion. A portion of Ms. Smolinski's criminal record, including crimes of *crimen falsi*, were introduced at trial, such that the court was aware of her criminal history. **Solano**, 129 A.3d at 1175-76. Accordingly, this claim is not of arguable merit. **Sandusky**, 203 A.3d at 1043-44.

### Trial Court's Alleged Racial Bias

Finally, in *pro se* correspondence to the PCRA court following his receipt of the Pa.Crim.P. 907 notice of intent to dismiss, Appellant raised an additional claim that the trial court had exhibited racial bias against him. **See** *Pro Se* Correspondence, 3/11/21, at 1. Appellant claimed that the court's statement "I get the flavor of who is behind him" was racist innuendo because Appellant's supporters at sentencing were men and women of color.[8] **Id.** at 1-2; **see also** N.T. Sentencing Hr'g, 3/23/17, at 6. Appellant claimed that all prior counsel, including PCRA counsel, were ineffective for failing to raise this claim. Pro Se Correspondence, 3/11/21, at 1-2. As noted above, we may not

---

[8] The full context of this remark is as follows:

> **[DEFENSE COUNSEL]**: Your Honor, one thing before I really get started. There's been a lot of family members here, sentencing has been continued for a variety of different reasons. I know that Kimberly, his wife, is in South Carolina. She's been texting with me. Originally, this was scheduled for Friday and got moved. She wasn't able to make it up here.
>
> **THE COURT**: Right. I know, I had a letter from his wife. I have a number of letters. **So, I get the flavor of who is behind him.**

N.T. Sentencing Hr'g, 3/23/17, at 6.

consider hybrid representation in PCRA proceedings. *See Pursell*, 724 A.2d at 302. However, even assuming *arguendo* the claim was properly raised, we would find it without merit.

Pa.R.Crim.P. 907 provides that a defendant may respond to a proposed dismissal notice within twenty days of the date of the notice. Pa.R.Crim.P. 907(1). "[T]he prisoner mailbox rule provides that a pro se prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing."[9] *Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011). Where the certified record does not indicate when an appellant delivers the document to prison authorities for mailing, but the envelope is postmarked, we will use the postmarked envelope for purposes of the filing date. *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1074 (Pa. Super. 2019). Here, twenty days from the date of the 907 notice would have been Monday, March 8, 2021. Accordingly, Appellant's *pro se* response was not timely filed and he was represented by counsel such that his filing would be impermissible hybrid representation. *See*, *e.g.*, *Pursell*, 724 A.2d at 302 (prohibiting hybrid representation in PCRA proceedings).

Regardless, we would decline to find that this issue had merit. It is unclear from Appellant's response to the 907 notice exactly what Appellant contends counsel should have done. Appellant does not claim that he asked counsel to request recusal and was refused. Nor does he claim that he

---

[9] Appellant had legal representation at this time such that he was acting *pro se* in this challenge.

requested that counsel object to this statement and was refused. Even if he had, he would not be entitled to relief. "A party seeking recusal bears the burden of producing evidence to establish bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." **Commonwealth v. Watkins**, 108 A.3d 692, 734 (Pa. 2014). Appellant's claim does not meet this standard, and no relief is due.

The PCRA court noted that

No relief is due on this claim because [A]ppellant did not and cannot establish that the verdict rendered by this [c]ourt was the product of racial animus or bias or that the alleged comment [A]ppellant claims was racist was in fact so. The verdict rendered by this [c]ourt was solely the product of a careful, considered, and objective assessment of the evidence.

PCRA Ct. Op. at 12.

Accordingly, based on our review of the record, we agree with the PCRA court that Appellant's claim has no arguable merit. He is not entitled to relief. **Sandusky**, 203 A.3d at 1043-44.

For these reasons, and because Appellant failed to establish that his trial counsel and appellate counsel were ineffective, we affirm the PCRA court's order denying relief. **See Sandusky**, 203 A.3d at 1043-44.

Order affirmed.

Judge Lazarus joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2022