J-A09032-22

**NON-PREDEDENTIAL DECISION – SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHESTER BOTCH | : | No. 1136 EDA 2021 |

Appeal from the Order Entered May 5, 2021
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0001743-2019

BEFORE:  NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY PELLEGRINI, J.:  **FILED AUGUST 15, 2023**

The issue in this appeal is whether the Court of Common Pleas of Monroe

County (trial court) erred in granting Chester Botch's (Botch) motion to

suppress recordings made at the behest of the Commonwealth by a prison

inmate, Jonathan Geltz (Geltz), violated Botch's Sixth Amendment right to

counsel because Geltz recorded statements while Botch was represented.  The

Sixth Amendment[1] right to counsel is offense-specific and, therefore, does not

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defen[s]e."  U.S.C.A. Const. Amend. 6.  This right "is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge,
*(Footnote Continued Next Page)*

prevent a suspect from being questioned about an unrelated case. I respectfully dissent because, unlike the majority, I would hold the suppressed recordings were related to offenses that had already been charged and would affirm the trial court.

## I.

## A.

Because the majority set forth in its opinion the factual background, only a short summary of the pertinent facts is needed. When the recordings were made, Botch was in prison for charges filed on October 31, 2018, at case number 2875 Criminal 2018 (2018 Case) and was charged with two counts of Possession with Intent to Deliver (PWID)[2] (heroin and Alprazolam[3]) and

---

preliminary hearing, indictment, information, or arraignment." **Texas v. Cobb**, 532 U.S. 162, 167-68 (2001) (citation omitted). "The right to counsel guaranteed by Article I, Section 9 of the Pennsylvania Constitution, is coterminous with the Sixth Amendment right to counsel for purposes of determining when the right attaches." **Commonwealth v. Gwynn**, 943 A.2d 940, 947-948 (Pa. 2008). Therefore, the state constitutional right to counsel attaches at the same time the Sixth Amendment right to counsel attaches, *i.e.*, "'the initiation of adversary judicial proceedings," which is generally arraignment. **Id.** at 948. Statements made to an informant while incarcerated on different charges does not violate a defendant's right to counsel. **See Commonwealth v. Bomar**, 826 A.2d 831, 844 (Pa. 2003).

[2] 35 Pa.C.S. § 780-113(a)(3).

[3] Alprazolam is Xanax.

related possession charges[4] based on the drugs and paraphernalia found in his home on October 24, 2018. (*See* 2018 Case Police Criminal Complaint and Affidavit of Probable Cause, 10/31/18, at 3-4). Those charges were instituted when the police were summoned to Botch's home because Thomas Bartkovsky (the Victim) was hanging by a rope in Botch's garage. After obtaining a search warrant, drugs were found and the above charges were filed. Botch had counsel relating to those charges. The investigation continued into the circumstance of the Victim's death.

Regarding that investigation, the police met Geltz, an inmate housed with Botch, who volunteered that Botch admitted that the Victim overdosed on heroin he had given him. After discussions with the police, Geltz agreed to wear a wire and after a court order approving the intercept, the police provided Geltz with a recording device which recorded six relevant segments in which Geltz guided Botch to talk about the Victim's death. Among other statements, Botch told Geltz he gave the Victim a brick of heroin and the Victim overdosed before Botch "strung him up in his garage" with a rope. (2019 Affidavit of Probable Cause, at 12).

As a result of that investigation, on June 7, 2019, a criminal complaint and affidavit of probable cause were filed against Botch at case number 1743

---

[4] The related charges included Conspiracy to Commit PWID, three counts of Possession of Drugs (heroin, alprazolam and buprenorphine) and two counts of Possession of Drug Paraphernalia.

Criminal 2019 (2019 Case), the case on appeal. It contained new charges of Drug Delivery Resulting in Death (DDRD), Criminal Use of a Communication Facility, Abuse of Corpse, Tampering with Evidence and Criminal Conspiracy, as well as the old 2018 charges of PWID, Possession of a Controlled Substance and Possession of Drug Paraphernalia. (*See* 2019 Police Criminal Complaint and Affidavit of Probable Cause, 6/07/19, at 3-6). The information identified the drugs involved in the PWID as heroin and Alprazolam. (*See* Information, 8/27/19, at 1). The 2019 affidavit of probable cause contained the same information related to the PWID drug charges, as well as information about the new DDRD related charges.

At the July 11, 2019 preliminary hearing, Detective Venneman confirmed that there was nothing new in the 2019 complaint "drugwise." (*See* N.T. Preliminary Hearing, at 33). On September 16, 2019, the Commonwealth filed a petition to *nolle pros* the charges in the 2018 Case on the basis that both PWID and additional charges had been filed in the 2019 Case "arising out of substantially similar facts and circumstances" and that Botch had been arraigned on the 2019 Case. (Commonwealth's Petition for Nol Pros, Docket No. 2575 Criminal 2018, 9/16/19, at ¶ 2).

**B.**

Botch then filed a motion to suppress as part of his omnibus pretrial motion in which he argued that the six individual segments which Geltz induced Botch to talk about the Victim's death violated, among other reasons,

that because the recordings involved matters with which he was already charged, that his Sixth Amendment right to counsel was violated. At the conclusion of the hearing, the trial court granted the motion to suppress the recordings on the record based on the violation of Botch's Sixth Amendment right to counsel. It explained, in pertinent part, that:

> In this case, the fundamental problem with the Commonwealth's argument is that there is no separation between … the original charges … and the … new charges. … Given that, the Commonwealth has not argued or even attempted to argue that there is any basis … for holding that the right to counsel did not attach at least as to those charges or how evidence of those charges could come into this trial when you have both old and new that will be heard at the same trial ….
>
> *   *   *
>
> … [A]fter this case was filed, [] the Petition to *Nolle Pros*, … subparagraph A of Paragraph 2 lists all the charges that were originally filed in the 2018 case itself. Subparagraph B says that the above-referenced charges have also been filed and are included in … this case. In addition, … the detective who testified at the preliminary hearing in this case was specifically asked if there are any difference[s] in the drug charges, and his response was no. And now … there appears to be no issue with respect to the fact that at least Mr. Geltz is indicating that [Botch] told him that the drugs … were the same.
>
> So for Sixth Amendment purposes, I cannot accept and do not find that the possessory drug crimes that are pled in this case are new, distinct, or separate or in any way different from the crimes originally pled in 2018. To be certain, Drug Delivery Resulting in Death, Tampering with Evidence, Abuse of Corpse, and Criminal Use of a Communication Facility are new crimes. However, again, if this was two different trials, I don't think there would be an issue, but it's not. This is brought together in one information, and it's going to head towards one trial, and I think that you can't separate out the fact that there was a violation of the Sixth Amendment right to counsel as to some but not all of the … charges that have been filed and then somehow try to ask the jury

- 5 -

to consider the evidence as to the quote/unquote new charges but not the old.

* * *

However, I want to make clear … I perceive the Motion to Suppress as seeking only suppression of the recorded statements intercepted by Mr. Geltz. The record demonstrates that there were statements made to Mr. Geltz [and other inmates] by [Botch] … that were not recorded[.] … and I'm going to specifically indicate that my ruling is only with respect to the statements … that were recorded by Mr. Geltz after he was sent back in wearing a wire.

(N.T. Hearing, 5/04/21, at 47, 53-56); (**see also** Trial Ct. Op., at 8).

The majority reverses the trial court because PWID charges originally filed in 2018 and refiled in 2019 do not constitute the same offense and Botch's right to counsel was not violated. It reasons that those crimes are unrelated because, "while it is unclear from a procedural perspective exactly why the Commonwealth elected to file the DDRD charge in the 2019 complaint along with re-charging the PWID charges originally charged in the 2018 complaint, this perplexing decision does not change the uncontroverted facts of record that: (1) the 2018 complaint charged two counts of PWID specifically related to the drugs and drug paraphernalia found at the home pursuant to the October 24, 2018 search warrant; (2) Geltz obtained the consensually intercepted statements in January and February 2019 and Botch's statements only related to the death of Bartkovsky; (3) law enforcement did not encourage Geltz to discuss the PWID charges in the 2018 complaint; and (4) the separate crime of DDRD remained uncharged until June 7, 2019."

Like the trial court, I disagree with the majority that Botch's Sixth Amendment right to counsel was not violated because the Commonwealth brought all the PWID and DDRD charges together in one information, the charges are going to be tried together, and the evidence needed to establish the DDRD charge overlaps with the evidence and cannot be separated from proving the PWID charges. Let me more fully explain.

## II.

### A.

"Any statement made by the individual . . . which is deliberately elicited by police, without the individual making a valid waiver of the right to counsel, is deemed a contravention of this right. A statement may be deliberately elicited by police through use of an informant."[5] **Commonwealth v. Hannibal**, 156 A.3d 197, 212–13 (Pa. 2016), *cert. denied*, 138 S.Ct. 59 (2017) (citations and most quotation marks omitted).[6] However, "a defendant's statements regarding offenses for which he has not been charged

_____

[5] The Commonwealth does not contest that Geltz was acting as its agent at the time he elicited and recorded the subject statements.

[6] It is well-settled that "[a] voluntary jailhouse admission made to a fellow inmate is not subject to any more protection than a confession made by the defendant outside of his jail cell to another person willing to notify authorities." **Commonwealth v. Ogrod**, 839 A.2d 294, 329 (Pa. 2003). Botch did not move to suppress the unrecorded statements he voluntarily made to Geltz or the other two jailhouse informants, and the court limited its holding to only the recorded statements made to Geltz at his encouragement.

are admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991).

"Although it is clear that the Sixth Amendment right to counsel attaches only to charged offenses, we have recognized in other contexts that the definition of an 'offense' is not necessarily limited to the four corners of a charging instrument." *Texas v. Cobb* at 172-73 (2001), (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "[W]hen the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test[,]" which provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 173; *Blackburger*, *supra* at 304. "In this sense, we could just as easily describe the Sixth Amendment as 'prosecution specific' insofar as it prevents discussion of charged offenses as well as offenses that, under *Blockburger,* could not be the subject of a later prosecution." *Cobb*, *supra* at 173 n.3

**B.**

The issue in this case then is whether the PWID charges originally filed in 2018 and refiled in 2019 require a proof of a fact involved in the DDRD charge so that Botch's right to counsel attached for both the PWID charges

and the DDRD charge when the recordings were obtained. The Commonwealth contends that the offenses are unrelated because:

> Botch's possession of the controlled substances actually found in his residence consistent with distribution on October 24, 2018, and charged in the October 2018 Complaint and the actual delivery of controlled substances to the Victim resulting in his death prior to that time were distinct criminal violations. Utilizing the **Blockburger** rationale in the **Cobb** framework as applied to the case at bar, [Botch]'s Sixth Amendment right to counsel would not have attached regarding the [DDRD] offense and, as such, the trial court's order suppressing the recorded statements should be reversed.

(Commonwealth's Brief, at 7-8). The Commonwealth's attempt to separate his 2018 PWID charge from the 2019 DDRD[7] is not persuasive.

> PWID is defined as:

> the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

36 P.S. § 780-113(a)(30).

> DDRD is defined as:

> A person commits [DDRD,] a felony of the first degree[,] if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of [The Drug Act] , and another person dies as a result of using the substance.

---

[7] Although Botch was charged with multiple crimes, including PWID, the Commonwealth only focuses its argument on the DDRD charge.

As can be seen, the charge of DDRD includes the same evidence as the PWID, since DDRD is essentially PWID where "another person dies as a result of using the substance." 18 Pa. C.S. § 2506(a). DDRD does not require additional scienter and automatically applies if a death occurs.

**C.**

In 2018, Botch was charged with PWID of heroin and prescription medications. (*See* 2018 Criminal Complaint, at 3). In 2019, he was charged with DDRD for PWID of heroin and Alprazolam. (*See* 2019 Criminal Complaint, at 3); (Information, 8/27/19, at 1). Detective Venneman testified that in Geltz's de-briefing, the informant advised that Botch told him that he gave the Victim drugs from his stash of baggies labeled "Death Row" which lab testing results showed was heroin and Alprazolam, before hanging him to make his death look like a suicide. (*See* N.T. Suppression Hearing, at 38-42). Botch's possession and delivery of drugs labeled "Death Row" was the basis for both complaints in the PWID and DDRD charges.

Consequently, the informant's recorded questioning of Botch about the facts of the new, unindicted DDRD charge necessarily involved incriminating statements and questions about the heroin and Alprazolam that formed the basis of the indicted PWID charge. In other words, the DDRD and PWID charges were, for all practical purposes, the same charges with the same evidence, other than the undisputed fact that the Victim died as a result of the delivery. If Botch was acquitted of either charge, under *Blockburger* and

- 10 -

***Cobb***, he could not be acquitted of the other charge or, for that matter, be the subject of a later prosecution.

**D.**

Further, we are not persuaded by the Commonwealth's argument that Botch's recorded admissions pertained to different drugs than those underlying his PWID charge because there is reference to a "hot shot" and additional drugs were found in the Victim's body. Although the Commonwealth attempts to draw a distinction because there were other drugs found in the Victim's body, the fact remains that Alprazolam was one of those drugs. (***See*** Autopsy Report, at 1). Moreover, although there was testimony that Botch said he gave the Victim a "hot shot," it is not clear from the record provided to this Court exactly what this referred to and does not negate the fact that the Commonwealth's questioning of Botch about the "Death Row" (heroin and Alprazolam) drugs that formed the basis of both complaints violated his right to an attorney. We also note that Detective Venneman stated at the preliminary hearing that there was nothing new in the 2019 complaint "drugwise" and the Commonwealth's petition to *nolle pros* the 2018 Case stated that the 2019 Case "[arose] out of substantially similar facts and circumstances," and that it did not argue at the suppression hearing that there was any separation between the 2018 and 2019 PWID charges.

Accordingly, for the forgoing reasons, I respectfully dissent.